Dear Mr. Bourgeois and Mr. Coulon:
You requested an Attorney General's opinion on behalf of the Louisiana Stadium and Exposition District ("LSED") regarding the disposition of income taxes collected in Louisiana on the income of non-resident NBA professional athletes and NBA sports franchises. You indicate that the LSED owns the New Orleans Arena ("Arena") and leases it to the State of Louisiana ("State") pursuant to the Amended and Restated Lease Agreement ("Lease Agreement") dated April 1, 1994, by and between the LSED, as lessor, and the State, as lessee. On May 2, 2002, the State, SMG, in its capacity as manager of the Arena, and the Charlotte Hornets NBA Limited Partnership (now New Orleans Hornets; "Hornets") entered into an Arena Use Agreement concerning the Hornets' relocation to New Orleans. The LSED is not a party to the Arena Use Agreement. You also advise that pursuant to a Cooperative Endeavor Agreement, and an amendment thereto, between the LSED, the State, Department of Culture, Recreation and Tourism ("CRT") and Jefferson Parish, the Alario Center multi-purpose complex was constructed at Bayou Segnette State Park in the city of Westwego in Jefferson Parish. Pursuant to the Cooperative Endeavor Agreement, the land upon which the Alario Center is built is owned by CRT, the construction project was administered by the LSED and the LSED became solely responsible for maintenance and operation of the Alario Center upon its completion. You indicate that the Alario Center is owned by LSED.
Your question involves a provision of the Arena Use Agreement regarding income taxes collected in Louisiana on the income of non-resident NBA professional athletes and NBA sports franchises. Section 25.22 of the Arena Use Agreement provides:
 The State shall pay or cause to be paid to the Hornets on or before August 15 of each year an amount equal to the income taxes collected by the State attributable to the income of nonresident professional NBA athletes and NBA sports franchises that was earned in Louisiana and remitted to *Page 2 
the LSED or the Manager in the preceding Fiscal Year, as an operating expense of the Arena.
The Louisiana Department of Revenue has collected income taxes for use of the Arena by non-resident NBA players and franchises, and has also collected income taxes from non-resident Hornets' players for "duty days" (practices) at the Alario Center. The Department of Revenue recently remitted all amounts collected to the LSED for both Arena-related and Alario Center-related non-resident income taxes. Pursuant to the Arena Use Agreement, the full amount of those tax collections has been forwarded to the Hornets. You question whether the Alario Center-related collections are due to the Hornets under the Arena Use Agreement or must be used for another purpose pursuant to La. R.S.39:100.1.
First, we note that R.S. 39:100.1 governs the disposition of the income taxes collected on the income of non-resident NBA professional athletes and NBA sports franchises. The Sports Facility Assistance Fund ("Fund") was created pursuant to R.S.39:100.1, which provides:
 A. There is hereby created, as a special fund in the state treasury, the Sports Facility Assistance Fund hereafter sometimes referred to as "the fund".
 B. (1) Notwithstanding any other provision of law, after compliance with the requirements of Article VII, Section 9(B) of the Constitution of Louisiana relative to the Bond Security and Redemption Fund, and after a sufficient amount is allocated from that fund to pay all of the obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer shall pay an amount equal to income taxes collected by the state attributable to the income of nonresident professional athletes and professional sports franchises that was earned in Louisiana into the Sports Facility Assistance Fund.
 (2) The monies in this fund shall be used solely as provided by Subsection C of this Section and only in the amounts appropriated by the legislature. All unexpended and unencumbered monies in the fund at the end of the fiscal year shall remain in the fund. The monies in the fund shall be invested by the state treasurer in the same manner as monies in the state general fund, and interest earned on the investment of these monies shall be credited to the fund following compliance with the requirements of Article VII, Section 9(B) relative to the Bond Security and Redemption Fund.
 (3) For purposes of this Subpart, "professional athlete" means an athlete that either plays for a professional sports franchise or who is a member of a professional sports association or league. A "professional sports *Page 3 
franchise" means a member team of a professional sports association or league. "Professional sports association or league" means any of the following:
 (a) Professional Golfers Association of America or the PGA Tour, Inc.
 (b) National Football League.
 (c) National Basketball Association.
 (d) National Hockey League.
 (e) East Coast Hockey League.
 (f) Pacific Coast League.
 C. Except as otherwise provided in this Subsection, the monies in the fund shall be appropriated to the owner of the facility, course, stadium, or arena at which nonresident professional athletes and professional sports franchises earned income in Louisiana. Monies deposited in the fund resulting from participation in the National Football League shall be appropriated to the Louisiana Stadium and Exposition District. Except as otherwise provided in this Subsection, such monies appropriated shall be used for renovations, additions, operations, or maintenance of such facility, course, stadium, or arena. Except for monies deposited in the fund resulting from participation in the Pacific Coast League, monies appropriated to the Louisiana Stadium and Exposition District shall be used solely and exclusively for renovation of the Superdome, stadium development, development and promotion of the Louisiana Stadium and Exposition District, and for payment of contractual obligations of the district. Monies deposited in the fund resulting from participation in the Pacific Coast League and appropriated to the Louisiana Stadium and Exposition District shall be used solely and exclusively for renovations, operation, and maintenance of the baseball facility owned by the district in Jefferson Parish. Monies deposited in the fund resulting from the golf tournament known as the Compaq Classic, or its successor, shall be appropriated to the FORE Kids Foundation, Inc. for expenses of the foundation incurred in connection with the Compaq Classic.
 D. The secretary of the Department of Revenue is authorized to prescribe regulations that provide for the proper attribution of income taxes to the fund, and that require any returns, schedules, and payments necessary to carry out the purposes of this Section. All such regulations shall be *Page 4 
promulgated in accordance with the Administrative Procedure Act and shall have the full force and effect of law.
This statute provides that, subject to requisite funding of the Bond Security and Redemption Fund, an amount equal to income taxes collected by the state attributable to the income of nonresident professional athletes and professional sports franchises shall be paid into the Fund. Monies in the Fund are to be used solely as provided for in Subsection (C).
Subsection (C) first provides that, except as otherwise provided, the monies in the fund shall be appropriated to the owner of the facility, course, stadium, or arena at which nonresident professional athletes and professional sports franchises earned income in Louisiana. Subsection (C) does not specifically address the Arena, the Alario Center or the National Basketball Association, which means the monies in the Fund attributable to income taxes for use of the Arena by non-resident NBA players and franchises, and income taxes from non-resident Hornets' players for "duty days" at the Alario Center must be allocated to the owner of the facility at which the nonresident professional athletes and professional sports franchises earned the income. All monies attributable to income earned at the Arena must be appropriated to LSED, as owner of the Arena. All monies attributable to income earned at the Alario Center must also be allocated to LSED, as owner of the Alario Center.
As for the purposes for which the allocated funds may be used, Subsection (C) provides, relative to LSED, that LSED shall use such funds "solely and exclusively for renovation of the Superdome, stadium development, development and promotion of the Louisiana Stadium and Exposition District, and for payment of contractual obligations of the district." While the LSED is not a party to the Arena Use Agreement, the contractual obligations of the LSED include the obligations under the Lease Agreement. Section 5 of the Lease Agreement provides in part:
 Right to Revenue; Rental. Recognizing that the exercise of the powers of the District will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and in consideration of (i) the state's right as Lessee to manage, control and use the Superdome, (ii) the obligation of the District as Lessor to pay the Operating Expenses during the Term of this Lease Agreement, and (iii) the District's agreement to hereafter acquire and construct additional facilities and make improvements in accordance with the Act and Section 3 hereof and to carry out the intent of Act No. 640 of 1993 that the District shall be entitled to all Revenues derived in each Fiscal Year from the operation of the Superdome, which Revenues are required to be used to pay Operating Expenses thereof, the State as Lessee agrees and declares that the Revenues shall at all times constitute property of the Lessor to be deposited directly on each banking day with the Depositary of the *Page 5 
Operating Fund to be held and applied in accordance with this Lease Agreement.
Operating Expenses are defined in Section 1 of the Lease Agreement:
 "Operating Expenses" means all expenses of administering, operating, managing and maintaining the Superdome, including, without limitation, (i) Real Estate Taxes, (ii) payments to the Working Capital Fund as required by Section 11 hereof, (iii) payments annually for deposit to the credit of the Renewal and Replacement Fund in the amount of $2,300,000, and (iv) payments annually to the Greater New Orleans Tourism and Convention Commission in the amount of $1,500,000 so long as such payment is authorized by the Act and approved by the Joint Legislative Committee on the Budget.
In order to secure the Hornets as a tenant for the Arena, and to ensure that the Hornets play their home games at the Arena, the Hornets were granted the right to receive certain payments under the Arena Use Agreement, including those payments due under Section 25.22 of the Arena Use Agreement. These payments are an expense which is necessary for the operating of the Arena. As such, these payments are a contractual obligation of the LSED under the Lease Agreement. Therefore, the LSED is authorized to use the funds allocated to the LSED under R.S. 39:100.1 to pay the amounts due to the Hornets under Section 25.22 of the Arena Use Agreement.
Whether the Alario Center-related collections are due to the Hornets under the Arena Use Agreement is a question of fact which must be decided by a trier of fact (judge or jury). If the Alario Center-related collections are due to the Hornets, the LSED is authorized to make such payments with monies allocated to the LSED from the Sports Facility Assistance Fund, pursuant to R.S.39:100.1.
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: _______________________
 KENNETH L. ROCHE, III
 Assistant Attorney General